STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-03-150
JLH-PEX-8

FILED & ENTERED
SUPERIOR COURT
AUG 11 2004
PENOBSCOT COUNTY

Maysie Munson,
          Plaintiff

          v.                                    Decision and Judgment

Bangor Housing Development Corp.,
          Defendant

DONALD L. GARBRECHT
LAW LIBRARY

AUG 27 2004

Hearing was held in this matter on July 7, 8 and 9, 2004. The plaintiff, a representative of the defendant and counsel for the parties were present. In this action, Maysie Munson seeks damages for personal injuries she claims she sustained because of mold in the apartment building where she lived between 1998 and 2003, and which is owned by Bangor Housing Development Corporation (BHD). For the reasons set out below, the court concludes that Munson has not proven by a preponderance of the evidence either that the apartment building was affected by an unhealthy mycological condition or that there is any causal connection between the alleged condition of the building and her medical state.

BHD owns a number of residential buildings located in three complexes in Bangor. Its function is to acquire residential facilities that might otherwise be purchased by private owners, thereby preserving their availability to qualified members of the public. Bangor Housing Authority, which is a corporate entity separate from BHD, then manages and maintains BHD's buildings. In February 1998, Munson moved into an apartment in the Pine Building of the Crestwood Place complex, which is owned by BHD. Munson used an enclosed interior staircase to get to and from her apartment, which was located on the second floor of the Pine Building. Munson claims that she had increasing respiratory problems during the time she lived there and that, in particular, the problems became more aggravated in 2000 and 2001. Munson testified that she felt as if her breath were "cut off" as she ascended the stairs in the stairwell and often had to stop

1

to try to catch her breath. She did not have similar problems on descent. Munson attributes these respiratory symptoms to mold. Munson also appears to contend that mold infected her apartment, also causing her physical distress.

In April 2000, sections of wallpaper in the stairway that Munson used began to peel off the wall. It appeared that this problem was the result of water infiltration. BHD maintenance workers removed the loose wallpaper, replaced a section of wallboard, cleaned the remaining walls and then painted the area. As this work was performed, the workers examined the insulation behind the damaged wallboard before covering it back up. BHD installed windows in the staircase to improve ventilation in that area.

During the winter of 2000-01, there were several damaging ice events, which caused leaks around the skylights in the stairwells. (It is unclear from this record whether those skylights were the same windows as the ones installed in 2000.) There also had been some less extensive leaking following the 1998 ice storm. Consequently, BHD decided to replace those skylights. BHD hired a contractor to do extensive work on the roof of the building, and as part of that project, the contractor removed the skylights. That work involved removing some sheetrock from the stairwell, and then applying and sanding joint compound on the new wallboard. There were gray stains on some areas of the sheetrock that was replaced during this process, and there were similar stains on some of the sheetrock that was not removed. Those stained areas were washed with bleach before they were painted. During the course of the 2001 construction project, Munson and another resident of the Pine Building collected two samples for laboratory testing. One sample was a piece of stained wallpaper, and the other consisted of some loose flakes. The samples were found to be penicillium and chaetomium, which are two forms of mold. The former, at least, is very common and ordinarily not toxic or pathogenic.

After the construction work was largely completed, Munson complained to the facility's maintenance supervisor that the situation had not improved. BHD then arranged for an air quality study of the stairwell, which was conducted in September 2001. The study's methodology includes the collection of air samples inside the stairwell, as well as samples from the outside environment. The results of this study revealed that, at the time it was conducted, there were molds present in the stairway, but those molds were the same species as were found outdoors. The study also demonstrated that the

molds in the stairwell were in a concentration that was no greater that was found outdoors. As was explained by the industrial hygienist who conducted the study, this means that the molds in the stairwell probably did not originate in that area. Rather, their source was the outside environment, and their indoor concentration was thereby diluted. Although the air quality study provides information about the condition of that air when the study was performed, it was conducted at a time when Munson claims to have been exposed to ongoing harm in that area. She alleges, for example, that despite the construction work in the stairway, the area was not adequately sealed and that molds were dispersed because the air was stirred. She also claims that the area was not properly cleaned, thus exposing molds to the atmosphere. The court finds, however, that at the time the study was conducted, the air in the stairway could not have been the cause of any medical condition claimed by Munson. This casts doubt on any claim that, at other times, the same situation existed.

For a separate reason, Munson has failed to prove that she was exposed to harmful levels of molds. The court accepts the analysis of a building science expert, who explained that the mold in the stairwell did not circulate in the air. Rather, because the mold resulted from water leaks around the windows, the mold resided between the wallpaper and the sheetrock. The mold thus remained buried in the wall and could not "communicate" with people who used the stairway. Although the 2001 construction process may have disturbed the mold that had been embedded in the hallway and allowed it to circulate in the air, this was a temporary condition and cannot explain the chronic respiratory problems that Munson attributes to the mold.

As is noted above, Munson also may be seen to argue that the air in her apartment was contaminated with unhealthy levels of mold.[1] This argument is based largely on her discovery during the winter of 2002-03 that the inside of an exterior wall in her apartment was wet. This contention fails because there is no meaningful evidence that there was

---

[1] This argument is presented less vigorously than her claim associated with the stairwell. She testified, for example, that she did not smell mold in her apartment, unlike the stairwell, where she said the smell of mold nearly choked here and nearly, in her view, nearly caused her to lose consciousness. Also, there is no visual evidence of any mold in the apartment itself. Nonetheless, the court addresses the merits of this apparent aspect of her claim.

any mold in her apartment. Further, there is affirmative evidence to the contrary, because in response to her complaint about the condition of the air in her apartment, BHD arranged for an air quality study of that environment. That study, conducted in February 2003, disclosed specifically that the ventilation system in Munson's apartment was not problematic. Rather, the analyst (the same one who had conducted the 2001 study of the air in the stairwell) found only a typical amount of dust in the ducts and, more generally, concluded that the air in Munson's apartment was "very clean."

Additionally, although Munson's apartment was adjacent to the stairwell at issue in this case, the airflow dynamics in that area of the building would not allow any mold in the stairwell to infiltrate her apartment. As the building science expert stated at trial, there was no physical pathway through which unhealthy air in the stairway could makes its way into Munson's apartment.

Finally, the evidence demonstrates that Munson's very real medical conditions are the product of other causes. Munson was diagnosed with several cardiac and cardiac-related diseases, including congestive heart failure, atrial stenosis and chronic obstructive pulmonary disease. Physical exertion (such as climbing stairs) is difficult for her, because her heart does not work efficiently. It is significant that Munson reported problems in the stairway only when she was ascending it. Her physical difficulties are best explained by the COPD. Further, from Munson's testimony, she did not appear to have the choking sensation when she descended the stairs. One would expect this reaction to be unrelated to her direction of travel, if it were caused by odors or other qualities of the air in the stairwell. Thus, the court does not view this evidence as indicative of the presence of unhealthy levels of mold.

Further, COPD weakens the lungs and makes them vulnerable to the type of infections that have affected Munson. Beyond this, at the very least, Munson's relevant medical problems are at least as likely to have been caused by circumstances other than mold.[2] However, some of her symptoms are more suggestive of a non-mold etiology

---

[2] Munson presented the testimony of a medical doctor, who holds the opinion that the mold in the apartment building aggravated a pre-existing respiratory condition. On its face, his testimony is no more probative than that of BHD's comparable expert. Beyond that, however, the plaintiff's expert had no information regarding the concentration of molds in the building, which, in reality, revealed that those concentrations were not

than the converse. For example, several of the medical episodes that led to hospitalizations occurred during the early morning hours, which is typical of an onset of problems created by COPD and atypical of exposure to toxins.

For these reasons, without addressing other arguments advanced by BHD in defense of Munson's claims, the court concludes that she has not proven that the condition of the apartment building was unsafe or unhealthy, and she has failed to prove any causative link between the environment in the building as she alleges and her medical condition.

The entry shall be:

For the foregoing reasons, judgment is entered for the defendant. The defendant is awarded its costs of court.

Dated: August 9, 2004

_____
Justice, Maine Superior Court
Jeffrey L. Hjelm

---

elevated. *See* plaintiff's exhibit 15 at pp. 32, 34. He also proceeded on the supposition that Munson was exposed to mold in her bedroom during at least the 8 hours when one could expect her to be sleeping there. *Id.* at p. 34. This was not borne out by the air study analysis. In the end, the scientific evidence supporting BHD's argument is simply more probative than the combination of Munson's contra-evidence, which is affected by the weaknesses noted in this footnote, and the temporal coincidences she notes in this case regarding the times when she has been relatively healthy and unhealthy.

MAYSIE MUNSON - PLAINTIFF
812 OHIO ST CRESTWOOD PLACE #24
BANGOR ME 04401
Attorney for: MAYSIE MUNSON
SCHUYLER STEELE
PO BOX F
NEWPORT ME 04953

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2003-00150

**DOCKET RECORD**

vs

BANGOR HOUSING DEVELOPMENT CORPORATION - DEFENDANT
161 DAVID RD
BANGOR ME 04401
Attorney for: BANGOR HOUSING DEVELOPMENT CORPORATION
STEPHEN BURLOCK
WEATHERBEE WOODCOCK ET AL
PO BOX 1127
BANGOR ME 04402-1127

Filing Document: COMPLAINT
Filing Date: 08/15/2003

Minor Case Type: PROPERTY NEGLIGENCE

## Docket Events:

08/15/2003 FILING DOCUMENT - COMPLAINT FILED ON 08/15/2003

08/15/2003 Party(s):  MAYSIE MUNSON
ATTORNEY - RETAINED ENTERED ON 08/15/2003
Plaintiff's Attorney: SCHUYLER STEELE

08/15/2003 Party(s):  BANGOR HOUSING DEVELOPMENT CORPORATION
RESPONSIVE PLEADING - ANSWER & AFFIRMATIVE DEFENSE FILED ON 08/15/2003
DEFENSES AND ANSWER TO PLAINTIFF MUNSON'S COMPLAINT. (RECEIVED 8/4/03)

08/15/2003 Party(s):  BANGOR HOUSING DEVELOPMENT CORPORATION
OTHER FILING - ENTRY OF APPEARANCE FILED ON 08/15/2003
Defendant's Attorney: EDWARD W GOULD
ON BEHALF OF DEFENDANT.

08/15/2003 Party(s):  BANGOR HOUSING DEVELOPMENT CORPORATION
ATTORNEY - RETAINED ENTERED ON 08/15/2003
Defendant's Attorney: EDWARD W GOULD

08/15/2003 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 08/15/2003
TO ATTORNEY FOR THE PLAINTIFF.

08/18/2003 Party(s):  BANGOR HOUSING DEVELOPMENT CORPORATION
SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 08/18/2003
BY PLAINTIFF.

08/18/2003 Party(s):  BANGOR HOUSING DEVELOPMENT CORPORATION
SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 07/23/2003
OFFICER'S RETURN OF SERVICE AS TO DEFENDANT BANGOR HOUSING DEVELOPMENT CORPORATION BY
BRENDA BROWN.

08/22/2003 ORDER - SCHEDULING ORDER ENTERED ON 08/22/2003